No. 89-052

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

IN THE MATTER OF
B.J., a Youth Under the
Age of Eighteen.

_____

APPEAL FROM:  District Court of the Twentieth Judicial District,
              In and for the County of Lake,
              The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Timothy J. Lape, Polson, Montana

        For Respondent:

            Hon. Marc Racicot, Attorney General, Helena, Montana
            Paul D. Johnson, Asst. Atty. General, Helena
            Larry Nistler, County Attorney; Robert Anderson, Deputy,
            Polson, Montana

_____

                            Submitted on Briefs:  July 20, 1989

                            Decided:  October 17, 1989

Filed

_____
                    Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

B.J., a youth under the age of eighteen, appeals from the transfer of jurisdiction over his robbery charge under § 45-5-401(1)(b), MCA, and his felony assault charge under § 45-5-202(2)(b), MCA, from Youth Court to the District Court of the Twentieth Judicial District, Lake County, pursuant to § 41-5-206, MCA. We affirm.

The issue raised on appeal is whether substantial credible evidence supported the District Court's order transferring jurisdiction from Youth Court to District Court.

On December 6, 1988, B.J. and two accomplices were alleged to have robbed the Holt family at gunpoint in violation of § 45-5-202(2)(b), MCA, and § 45-5-401(1)(b), MCA. Youth Court petitions were filed on December 7, 1988, and January 4, 1989, which charged B.J. with the offenses. Also on January 4, 1989, the State filed a motion to transfer the cause to District Court under § 41-5-206, MCA. A hearing on the motion was held on January 23, 1989. Testimony and evidence detailing the events of December 6, 1988, were presented at the hearing.

Holt, the robbery and assault victim, testified that on December 6, 1988, three men approached his home by driving a vehicle up his driveway, across his lawn, and up to his back door. Holt testified that his home was without lights due to a power outage that evening. Holt walked out of his home to investigate and was greeted by a man, he later identified as B.J., who placed a shotgun to Holt's head. Holt then testified that he inquired as to the seriousness of the situation to which B.J. replied, "God damn serious," and that they were going to kill Holt.

The three men then ordered Holt to tell his wife to open the door to the Holt residence or they would kill her. The Holts' two young children were also in the home. The men entered the darkened home, tore the telephone off the wall and demanded "drugs, money, and the keys to your car." Holt testified that he gave the men his wallet, told them that he did not have any drugs, and told them that the keys to his car were in the ignition. Holt started his car for the three men, who drove off in it leaving their original vehicle behind. Holt stated that during the entire ordeal, he was held at gunpoint and repeatedly threatened with his life.

Sheriff's detective Michael Walrod testified at the hearing that he arrived at the Holt residence at approximately 12:30 a.m. shortly after the three men departed. He ran a check on the vehicle abandoned by the threesome and discovered that it was registered to B.J.'s mother. A sheath knife and a club was found therein.

Sanders County Sheriff Bill Alexander testified that on December 7, 1988, he stopped the stolen Holt vehicle after receiving a dispatch report of an armed robbery. He then arrested the occupants. A search of the vehicle revealed a military sheath knife, a sheath knife, 20 gauge shotgun shells, a .22 caliber pistol, and a shotgun. The weapons found in the vehicle were introduced as the State's exhibits during the transfer hearing.

The chief juvenile probation officer for Lake County, David McDougall, testified as to his current file on B.J., stating that B.J. was seventeen years old at the time of the offense; that in 1983, B.J. was on juvenile probation for burglary; that B.J. was charged repeatedly with theft in 1986; that B.J. was placed unsuccessfully in youth homes from October 1986 through February 1988; that B.J. was expelled from high school in 1987; and, that in January 1988, B.J. was

charged with intimidation and other minor offenses for which he was adjudged delinquent by the Youth Court in March of 1988. McDougall further testified that B.J. was ordered to Pine Hills School for boys for a 45 day psychological evaluation, which resulted in a negative report. McDougall stated that in his opinion, B.J. would not be an appropriate candidate for the Pine Hills School because he was too advanced in age, his criminal record was too serious, and he was too mature for the programs offered at the facility.

The deputy superintendent for program group living at Pine Hills, Don Lee, also testified at the hearing. He stated that given the serious nature of B.J.'s criminal record, he would oppose B.J.'s placement in Pine Hills School and, that the only institution suitable for placement of B.J. would be the state prison.

Upon consideration of the testimony and the evidence submitted, the court granted the State's motion to transfer to District Court. B.J. argues that the motion was improperly granted because it was not predicated on substantial credible evidence. We disagree.

Section 41-5-206, MCA, sets forth, in part, the requirements which must be met before a Youth Court case can be transferred to District Court as follows:

> (1) After a petition has been filed alleging delinquency, the court may, upon motion of the county attorney, before hearing the petition on its merits, transfer the matter of prosecution to the district court if:
>
> . . .
>
> (a)(ii) the youth charged was <u>16 years</u> of <u>age or more</u> at the time of the conduct alleged to be unlawful and the unlawful act is . . .
>
> . . .

- 4 -

(C) aggravated or <u>felony</u> <u>assault</u> as defined in 45-5-202;

(D) <u>robbery</u> as defined in 45-5-401;

. . .

(d) the court finds upon the hearing of all relevant evidence that there is <u>probable</u> <u>cause</u> to believe that:

(i) The youth committed the delinquent act alleged;

(ii) the <u>seriousness</u> <u>of</u> <u>the</u> <u>offense</u> and protection of the community require treatment of the youth beyond that afforded by juvenile facilities; and

(iii) the alleged offense was committed in an <u>aggressive</u>, <u>violent</u>, or <u>premeditated</u> manner. (Emphasis ours.)

The statute also provides that the court may consider the sophistication and maturity of the youth as well as his record and previous history.

Here, the statutory requirements of § 41-5-206, MCA, were met. B.J. is seventeen years old, is alleged to have committed both felony assault and robbery, and the court found that the evidence presented at B.J.'s hearing was sufficient to establish probable cause as required under the statute.

The court's findings of fact provided the following:

The seriousness of the offenses alleged and the protection of the community require treatment of the youth beyond that afforded by juvenile facilities.

The finding was supported by the court's comments as reflected in the transcript. The court stated that the seriousness of the offenses were beyond treatment available in juvenile facilities of the state and that the only alternative to being placed in the state prison would be to

place B.J. on probation, which has proved to fail in the past.

Substantial credible evidence supported the court's findings. At the transfer hearing, testimony and evidence was presented. As previously noted, Holt, the robbery and assault victim, testified as to the events of December 6, 1988, and identified B.J. as one of the perpetrators; a sheriff's detective testified as to his investigation of the crime in which weapons were found in the perpetrator's abandoned vehicle; the Sanders County Sheriff testified as to the arrest of B.J. and his accomplices; the subsequent search of Holt's stolen vehicle revealed various weapons (the weapons were introduced as the State's evidence during the transfer hearing); the chief juvenile probation officer for Lake County testified as to B.J.'s criminal history and to the negative test results of B.J.'s psychological evaluation; and the deputy superintendent for program living at Pine Hills testified that he would oppose B.J.'s placement at the facility. We hold that the testimony and evidence submitted during the transfer hearing was substantial and credible. The transfer of jurisdiction from Youth Court to District Court was proper.

Affirmed.

_____
Justice

We Concur:

_____

_____

_____

- 6 -

John C. Shelley
Justices